FILED
CLERK, U.S. DISTRICT COURT

MAY 11, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JG_____ DEPUTY

1  EMILIO REYES
   615 5th Avenue
2  Chula Vista, CA 91910
   Tel: (619) 829-0130
3  E-mail: emiliotongva@gmail.com

4  Plaintiff in Pro Se

5

6

7

8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| EMILIO REYES, an individual, | Case No.: 5:18-cv-02128 GW (AGRx) |
|---|---|
| Plaintiff, | **VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, 5 USC § 702 et. seq.** |
| vs. | |
| DEPARTMENT OF THE INTERIOR; BUREAU OF INDIAN AFFAIRS; AMY DUTSCHKE in her official capacity as Regional Director of the Bureau of Indian Affairs Pacific Regional Office, and DOES 1-50, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## I.      PRELIMINARY STATEMENT

1.      Plaintiff, EMILIO REYES (hereinafter "Plaintiff"), by and through his attorneys of record herein, brings this Complaint for Injunctive Relief against the above-named Defendants, and in support thereof alleges the following action that seeks to resolve an important national debate surrounding the federal regulatory scheme governing relations among Native Americans concerning whether the United States government based solely upon discriminatory and irrational factors may group constituent members into suspect classifications that are derived from records not contained within the federal repository, historic groups of insular minorities that are

1

the targets of disfavored government treatment because of their fear they might receive federal recognition, if any at all, policies therefore that are unlawful and inconsistent.

2.     The Bureau of Indian Affairs (hereinafter "BIA") purposefully (1) denied Plaintiff's application for a Certificate of Degree of Indian or Alaska Native Blood (hereinafter "CDIB"), (2) misclassified Plaintiff, and many others, as belonging to the "Diegueño" [San Diego] Tribe, a non-federally recognized tribe, and (3) refused to acknowledge Plaintiff's Indian blood degree.

3.     Plaintiff's ancestors are listed as Gabrielino (State-Recognized) Indians in the records of the BIA. The Gabrielino are historically known as Shoshoneans of Southern California and appear on the California Indian rolls of the Act of May 18, 1928 (45 Stat. L 602), the 1948 amendment of the 1928 Act (62 Stat. 1166), and the 1968 amendment of the 1928 Act (82 Stat. 860 & 861).

4.     Instead of issuing a CDIB, the BIA issued a Statement Letter with the incorrect tribal affiliation because that "should be sufficient for your needs."  This decision was made notwithstanding other Gabrielino family members have obtained a CDIB from the BIA. This was caused by the disparate-treatment policies of the government because at most, applying defendant's randomness theory.

5.     The Department of the Interior (hereinafter "DOI") actions against specifically the Plaintiff are inconsistent, malicious, capricious, discriminatory, in violation of Plaintiff's Constitutional guarantees because certain documents pertaining Plaintiff's tribal affiliation and blood degree belonging to the Gabrielino tribe, were indeed destroyed without proper notice to the Archivist of the United States.

6.     Further investigation reveals Mr. Earl Campio, Ms. Angelita Grijalva Abrego, Ms. Stefanie Rodriguez, Mr. Angel Rodriguez Reyes, among others, were issued a CDIB (**Exhibit 1**) listing them as Gabrielino, because of their blood relationship to Maria Ana Grijalva Bega (hereinafter "Mary Grijalva") (**Exhibit 2**).

The United States Supreme Court held "the Equal Protection Clause" requires the government have a legitimate reason for withdrawing a right or benefit from one group but not others, whether or not it was required to confer that right or benefit in the first place." *Romer v. Evans*, 517 U.S. 620 (1996) 671 F.3d, at 1076, 1095.

7.     Although the BIA has consistently issued CDIB's to descendants of Mary Grijalva, the government has refused Plaintiff's numerous requests for similar issuance of certification maintaining that he is ineligible supposedly because "government records show that Mr. Reyes is affiliated with the Diegueño tribe" and "an applicant must show their relationship to an enrolled member of a federally recognized Indian tribe to receive a certification of degree of Indian blood" since apparently the  "Bureau of Indian Affairs' policy on issuing certifications of Indian Blood has changed." (**Exhibit 3**).

8.     Although Plaintiff is entitled to issuance of a valid CDIB, that CDIB must also show his true Gabrielino identity. (**Exhibit 4**).

9.     On April 23, 2018, the BIA issued its final decision for the DOI "because your request lacks sufficient documentary evidence to support a change, it will not be forwarded as originally stated in the February 17, 2016, letter [to the Division of Tribal Government Services in Washington D.C.]" (**Exhibit 5**).

10.     On August 13, 2019, the Plaintiff discovered that federal records pertaining to Plaintiff's tribal affiliation were indeed destroyed. A FOIA (BIA-2019-01374) request submitted to the BIA on August 10, 2019 and received on August 16, 2016, revealed the BIA *did not* notify the Archivist of the United States in regards to the alteration, deletion, erasure and destruction of Plaintiff's ancestors tribal affiliation records. (**Exhibit 6**).

11.     Indeed, Plaintiff challenges every one of defendant's policies, practices and, procedures that prevents him from obtaining a CDIB stating he is of Gabrielino descent, from DOI, parent agency of the BIA.

12.     Plaintiff is informed and believes that Defendants' omissions have

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

damaged and further caused emotional distress to Plaintiff Reyes. Therefore, Plaintiff is entitled for injunctive relief because a CDIB reflecting the correct tribal affiliation is needed for services guaranteed by Congress and the State of California.

## II.   PARTY DESIGNATIONS

13.    Plaintiff is a resident of San Diego County. Plaintiff descends from the Gabrielino (Tongva) Tribe; a film and history student; and a researcher of Native American Records.

14.    Defendant DOI is a cabinet department of the BIA, acting as one of its primary law enforcement agencies that helps administer, maintain, and oversee certain jurisdictional claims pertaining to Native Americans.

15.    Defendant Amy Dutschke is a federal official responsible for proper administration of the BIA in California and is the Regional Director of the Pacific Regional Office, responsible for upholding the federal fiduciary relationship over tribal and Indian resources. Ms. Dutschke is therefore sued in her official capacity only.

16.    The true names and capacities of Defendant's sued herein as DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues such Defendants by such fictitious names pursuant to Federal Rules of Civil Procedure § 15. Plaintiff alleges that each fictitiously named Defendant acted or failed to act in such a manner that each has contributed in proximately causing the damages to Plaintiff as herein alleged. Plaintiff will seek leave of Court to amend this Complaint to set forth their true names and capacities when ascertained.

17.    Plaintiff is informed and believes, and thereon alleges, that each of the Defendants sued herein, including those named herein as Does, are the agents, servants, employees, licensees, guarantees, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope of such agency, employment guaranty, assignment, license, invitation and/or relationship and with

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

the full knowledge and consent of the remaining Defendants.

### III.   JURISDICTION AND VENUE

18.   This action is brought under the Administrative Procedure Act, 5 U.S.C. § 554, 701-706, to compel Defendant, an officer and employee of a United States agency, to perform a duty owed to the Plaintiff and set aside Defendant's final determination which is arbitrary, capricious, nor in accordance with the law, and violates Plaintiff's Constitutional rights to equal protection and due process. Accordingly, this case presents controlling questions of federal law regarding Defendant's duty to issue a CDIB to ensure certain services such as Indian Health Service pursuant 25 U.S.C. § 1679(a)(2), to administer that duty in a consistent manner among similarly-situated of California Indians pursuant 25 U.S.C. § 651 et seq. and to maintain an accurate tribal affiliation and blood degree in the Secretary of the Interior approved California Indian rolls in accordance to 25 U.S.C. § 659.

19.   For the foregoing reasons, this Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (action to compel an officer of the U.S. to perform his duty), 5 U.S.C. § 551(4) (interpret and describe law or policy).

20.   Venue is proper in the Central District of California under 28 U.S.C. section 1391(e) because Defendant is an officer of the United States acting in his official capacity and under color of legal authority and agency of the United States and because a substantial part of the events or omissions giving rise to the claim occurred in the Central District.

### IV.   ARGUMENT

21.   Public Law 90-507—Sept. 21, 1968 enacted by the Senate and House of Representatives of the United States of America in Congress, states that "The Secretary of the Interior shall prepare a roll of persons of Indian blood who apply for inclusion thereon and (i) whose names or the name of a lineal or collateral relative

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

1   appears on any of the approved rolls heretofore prepared  pursuant to this subchapter

2   and the amendments thereto or (ii) who can establish, to the satisfaction of the

3   Secretary, lineal or collateral relationship to an Indian who resided in California on

4   June 1, 1852, and (iii) who were born on or before and were living on September 21,

5   1968."

6          22.     "The roll so prepared shall indicate, as nearly as possible, the group or

7   groups of Indians of California with which the ancestors of each enrollee were

8   affiliated on June 1, 1852. If the affiliation of an enrollee's ancestors on that date is

9   unknown, it shall be presumed to be the same as that of the ancestors' relatives

10  whose affiliation is known unless there is sound reason to believe otherwise." 25

11  U.S.C. § 659(b).

12         23.     Under the Administrative Procedures Act, found at 5 U.S.C. § 551 *et.*

13  *seq.* and 5 U.S.C. §§ 701 et seq. (the "APA") an agency decision will be set aside if

14  it is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

15  with the law; (B) contrary to constitutional right, power, privilege, or immunity; …

16  (D) without observance of procedure required by law; … 5 U.S.C § 706(2)(A); *see*

17  *also Partridge v. Reich*, 141 F.3d 920, 923 (9th Cir. 1998) quoting *Citizens to*

18  *Preserve Overton Park*, *Inc. v. Volpe*, 401 U.S. 402, 413-414 (1971).

19         24.     Under 5 U.S.C. 706, the Court should reverse a decision as arbitrary and

20  capricious if the agency, "failed to consider an important aspect of the problem, or

21  offered an explanation that runs counter to the evidence before the agency or is so

22  implausible that it could not be ascribed to a difference in view or the product of

23  agency expertise." *Cascadia Widlands, supra*, 801 F.3d at 1110; quoting *Lands*

24  *Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2009); *accord Motor Veh. Mfrs.*

25  *Assn. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

26         25.     Accordingly, the Court, "must consider whether the agency's decision

27  was based on a consideration of *relevant* factors and whether there has been a clear

28  error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)

(emphasis added). "At a minimum, the agency must have considered relevant data an articulated an explanation establishing a 'rational connection between the facts found and the choice made." *Muwekma #3, supra*, 813 F.Supp.2d at 189 quoting *Bowen v. Am. Hosp. Assn.*, 476 610, 626 (1986).

26.    "Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Los Angeles v. Shalada*, 192 F.3d 1005, 1021 (D.C. Cir. 1999); *see also Massachusetts v. E.P.A.*, 549 U.S. 497, 535 (2007) (E.P.A. action found arbitrary, capricious, and not in accordance with law because E.P.A. offered no reasoned explanation for its action).

27.    Disparate treatment of similarly situated parties without adequate explanation is not only a violation of the APA, it is a violation of Constitutional guarantees of equal protection. "Both the Equal Protection Clause and the APA prohibit agencies from treating similarly situated petitioners differently without providing a sufficiently reasoned justification for the disparate treatment." *Muwekma #2, supra*, 452 F.Supp.2d at 115; *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1102-03 (D.C.Cir.2005) ("To prevail on [an] equal protection claim, [a plaintiff must] demonstrate that [it] was treated differently than similarly situated [parties] and that the [agency's] explanation does not satisfy the relevant level of scrutiny.") accord *Pyler v. Doe*, 457 U.S. 202, 216 (1982).

28.    The United States Supreme Court held "the Equal Protection Clause requires the government have a legitimate reason for withdrawing a right or benefit from one group but not others, whether or not it was required to confer that right or benefit in the first place." *Romer v. Evans*, 517 U.S. 620 (1996) 671 F.3d, at 1076, 1095.

29.    As the Ninth Circuit has observed, "the equal protection argument can be folded into the APA argument, [where] no suspect class is involved and the only question is whether the defendants' treatment of [the Plaintiff] was rational (i.e., not

7

arbitrary and capricious)" *Ursack v. Group*, 639 F.3d 949, 955 (9th Cir. 2011) citing *U.S. v. Weston*, 255 F.3d 873, 880 (D.C. Cir. 2001) (describing the rational basis test and the arbitrary and capricious standard as "analogues").

30.     Further, Congress has delegated to the Secretary broad power to carry out the federal government's unique responsibilities with respect to Indians. *See Udall v. Littell*, 366 F.2d 688, 672 (D.C.Cir. 1966); CVMT II, 515 F.3d at 1267 (the Secretary "has the power to manage all Indian Affairs, and all matters arising out of Indian relations.") (emphasis in original)(citations omitted). Accordingly, the Regional Director is delegated by the Secretary of the Interior, in the decisions of appeals under her authority pursuant pursuant 25 C.F.R § 2.4(a).

31.     In reviewing a complaint, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

## V.     STATEMENT OF FACTS

### A. The Act of 1928, 1948 and 1968

32.     Based upon discovery of the 18 "lost treaties" in 1905, a series of efforts were made to address the treaty-less Gabrielino tribe, or at least to compromise its claims to land in Los Angeles County.

33.     The California jurisdiction Act of 1928 authorized the California Attorney General to represent the Gabrielino Tribe, among others, and to bring their land claims before the U.S. Court of Claims.

34.     The Act of 1928 authorized the Secretary of the Interior to create two census rolls. Roll 1 was the roll of California Indians residing in California on May 18, 1928. For the purpose of the act, the Indians of California were defined as those living in the State on June 1, 1852, and their descendants living in the State on May

18, 1928.

35.     Roll 2, authorized by section 7 of the act, was the roll of non-California Indians residing in California on May 18, 1928. No limit on the degree of Indian blood was fixed, and no requirements regarding tribal recognition and the maintenance of tribal relations were established.

36.     According to Fred Baker, Examiner of Inheritance of the DOI; 23,000 applicants had filed for enrollment on 11,253 applications. Of these, 10,719 applications were approved, 534 were rejected, and 216 involved in appeals. Of the 10,719 approved applications, about 584 applications were listed on the 1928 California Indian Census Roll as "Unknown Tribe," 97 applications were listed as "Tribe Not Given," 70 applications were listed as "Mission Tribe," and 5 applications were listed as "California Tribe."

37.     According to oral histories and as verified in the records of the BIA held at the National Archives (hereinafter "NARA"), the NARA in Washington holds the original 1928 applications. However, 1928 duplicate applications with pre-filled information are held at the NARA in Riverside in box 217 of the "Records Relating to Applications for Identification as a California Indian. It is believed the DOI pre-filled the information on the 1928 applications.

38.     As supported in the "Blanket Applications," nos. 10717, 10720, 10609 and 10645, California Indians living on an Indian reservations that refused the 1928 enrollment, were forcefully placed on these Blanket Applications. Other California Indians did not enrolled (filed a 1928 application) because according to BIA correspondence "we feel that when Indians become associated with the white community and take themselves a part of it they lose their identity as Ward Indians and take their place as American citizens without restrictions. The Indians prefer this in many cases, and there is no objection to it in the Indian Service."

39.     Upon completion of the 1928 roll, on February 23, 1935, the DOI Commissioner (Assistant Secretary) Mr. John Collier, received notice on

9

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

discrepancies in degree of Indian blood between the 1928 reservation census and on the roll of the Act of May 18, 1928. On March 16, 1935, Mr. Collier, agreed that the 1928 reservation census should be changed to agree with 1928 roll.

40.     The Court of Claims, in *California Indians v. U.S.* (1941) 98 Ct. Cols, 583, recognized the arguments of the California Attorney General, Earl Warren, that a "promise made to these tribes and bands of Indians and accepted by them but the treaties were never ratified so the promise was never fulfilled."

41.     Acting to recognize the equitable 1,553,772 acres of land claims of the Gabrielinos and the additional acres of "all the Indians of California," the Court awarded 7 cents an acre as compensation for the 8.5 million acres of land which was never set up as reservations under the 18 "lost treaties."

42.     The Court of Claims awarded no interest for the 94-year period between the signature of the 1851-1953 treaties and payment of the monies in 1944. The Indian Claims Commission addressed the Claims of the Gabrielino Tribe in Docket 80, where the Gabrielino group was treated as an Indian tribe, but only its members were named as Plaintiffs.

43.     This legal fiction would appear to a modern lawyer to eviscerate the effectiveness of the land claims settlement, which addressed only the claims of Individual Indians, and not the land claims of the Tribe itself. This would require California Indians to submit a 6-page application to the Regional Office of the BIA, listing almost every applicant as "Mission Tribe."

44.     In 1959, the Court of Claims entered a final order recognizing the aboriginal title of the Gabrielino Tribe and other California tribes to 64 million acres west of the Sierra Nevada Range. The tribe's title was recognized and $633 was paid to each Gabrielino in 1972. As part of the efforts to adjudicate the two land claim payments in 1944 and 1972, hundreds of Gabrielino tribal members were recognized as "Gabrielino Indians" on each of the California Indian Rolls of 1928, 1948, and 1968 of the BIA.

45.     As a result, the BIA recognizes the Acts for California Indians to issue a CDIB to applicants and the descendants of those listed on the California Indian Rolls of 1928, 1948 and 1968. However, in a Final Determination to Decline to Acknowledge the Muwekma Ohlone Tribe, the DOI; Office of Federal Acknowledgement, declared in its report that the information on the 1928 applications is unreliable and was not fully vetted. *Muwekma*, FD 2002, 15-24.

**B. The BIA Erroneously Listed Plaintiff's Ancestor as Diegueño and NOT Gabrielino**

46.     On February 19, 2013, the Plaintiff submitted a CDIB request. On February 21, 2013, Plaintiff Reyes, received a "statement verifying you are of California Indian Descent that should be sufficient for your needs." A CDIB was denied, instead, a statement letter was provided which included a wrong tribal affiliation and no blood degree.

47.     According to federal records, the DOI was unable to issue a CDIB because "you are affiliated with the Diegueno (San Diego) tribe, which is "not a federally recognized tribe. This information was found on your Great-Great Grandmother, Mary Bega's 1928 enrollment application… we have prepared a statement verifying you are of California Indian descent that should be sufficient for your needs."

48.     Plaintiff's ancestors, Mary Grijalva, application no. 5676 (**Exhibit 7**), Aurelia Grijalva Orosco (hereinafter "Aurelia Grijalva") , application no. 9461 (**Exhibit 8**) and Guillermo Grijalva, application no. 9462 (**Exhibit 9**) appear on the original California Indian Census Roll authorized by Congress in 1928 and approved by the Secretary of the Interior in 1933. Their descendants also appear on the 1948 and 1968 California Indian Rolls.

49.     In accordance to the Instructions to Applicants by the Secretary of the Interior, "…the words yes, no, unknown may be used…" (**Exhibit 10**). Mary

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

Grijalva's tribal affiliation is listed as "Unknown Tribe." However, the applications of full-sister, Aurelia Grijalva, and full-brother, Guillermo Grijalva, are listed as Gabrielino Indians.  *See* 25 U.S.C. § 659(b) ("If the affiliation of an enrollee's ancestors on that date is unknown, it shall be presumed to be the same as that of the ancestors' relatives whose affiliation is known unless there is sound reason to believe otherwise").

50.     The affidavit of Mary Grijalva's 1928 application shows her thumb print as an alternative to a hand signature, because as many, she could not write. Furthermore, oral history revealed Mary Grijalva did not speak English. Therefore, it remains unclear whether the tribal affiliation and blood degree was in fact decided by Mary Grijalva or by the DOI Examiners of Inheritance. Clearly, the DOI had Mary Grijalva sign her 1928 application without knowing or reviewing its contents.

51.     As a result, the BIA has conveniently listed many family members as Gabrielino and others as Diegueño Indians. This is despite the lineage coming from the same parents who are Gabrielino Indians and resided in the counties of Los Angeles, Orange, Santa Barbara, San Bernardino, and Riverside, which are historically known declared the ancestral lands of the Gabrielino.

52.     During the final roll of 1968, the BIA hired special agents or Claims Examiners to assign tribal affiliations to descendants of about 756 approved applicants who were listed on the 1928 roll as Unknown Tribe, Tribe Not Given, Mission Tribe and California Tribe.

53.     On or about 1970, Marcia Wiezorek and Ramona Harris, employees of the Claims Branch during the time the 1972 California Indian Judgment Fund roll was being prepared, the former employees wrongfully assigned Mary Grijalva as a Diegueño Indian, stating "will not ask for tribe, in 1928 the mother at age 64 did not know, so presumably this person will not know either. Mr. Bill stated that the Indians occupying the area where the mother was born were Gabrielinos." (**Exhibit 11**).

54.     However, additional correspondence found on the records of the BIA

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

state "from our case history we learn that the Bega family has inhabited the Temescal Valley since 1819 and claims to be <u>full blooded Indians</u> of the <u>Shoshone [Gabrielino] Tribe</u>." (**Exhibit 12**).

55.     In addition, mission records revealed Mary Grijalva's mother, Maria Guadalupe Arballo Grijalva, and Mary Grijalva's husband, Antonio Bega, were baptized in the Mission San Gabriel, listing them as full Gabrielino Indians. (**Exhibit 13**).

56.     Evidently, the BIA failed to review Plaintiff's ancestors 1928 applications of Aurelia Grijalva and Guillermo Grijalva, before assigning Mary Grijalva's tribal affiliation. Furthermore, the BIA notes and statements were made despite the correct tribal affiliation being reflected on many 1968 applications, in which the BIA manually crossed over the tribe which specifically was listed "Gabrielino" and instead listed numerous descendants as "Diegueño. (**Exhibit 14**).

57.     By numerous FOIA Requests, the BIA has neglected to provide copies of any research conducted by the BIA Claims Examiners in determining the tribal affiliation to some of the 756 applicants listed on the approved roll as "Unknown Tribe," including Plaintiff's ancestors.

58.     Further investigation revealed the special treatment by BIA to some individuals, including the Pacific Regional Director, Ms. Amy Dutschke, whose mother Ramona Burris, application no. 2926 and Grandfather, Clarence Burris, application no. 2925, appear on the Act of 1928 as "Unknown Tribe." However, on June 10, 1985, the BIA issued Ms. Dutschke a CDIB listing her correct tribal affiliation of Miwok, presumably based on other relatives' records. The BIA did not randomly assign Ms. Dutschke to a wrong tribal affiliation. (Exhibit 15). *See Romer v. Evans*, 517 U.S. 620 (1996) 671 F.3d, at 1076, 1095. ("The Equal Protection Clause requires the government have a legitimate reason for withdrawing a right or benefit from one group but not others, whether or not it was required to confer that right or benefit in the first place").

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

59.     Additional investigation revealed that certain records determining the tribal affiliation and blood degree for Plaintiff's ancestors were grossly mismanaged, falsified, or omitted as BIA response state on a report dated April 13, 2019, "…it is possible that some records Mr. Reyes expected to see had been destroyed as they were <u>considered temporary and subject to disposal</u>."

60.     The BIA confirmed in FOIA Request (BIA-2019-01374) dated August 16, 2019, that the agency failed to notify the Archivist of the United States pursuant 44 U.S.C. § 3106, 36 C.F.R. § 1230.14 and 36 C.F.R. 1222.24, on the destruction of federal records as "it has been determined that the BIA has no records responsive to your request" in determining Plaintiff's tribal affiliation.

61.     As reaffirmed by the D.C. Circuit in *Cobell v. Salazar*, "[t]he federal government has substantial trust responsibilities toward Native Americans," and that it was "equally clear [that it]… has failed time and again to discharge its fiduciary duties." As a result, the DOI created the American Indian Records Repository and no longer delivers records to the National Archives for storage and preservation.

62.     However, the Plaintiff believes the BIA records should be held at the NARA. As described herewith, the BIA historically has failed and continues to fail Native Americans. This is mainly the result of BIA Officials often caught in conflicts of interests, as revealed in numerous FOIA requests conducted by the Plaintiff.

## C. Plaintiff's Administrative Appeal and Bureau of Indian Affairs' Final Decision

63.     On April 4, 2013, the Plaintiff informed the BIA of the Southern California Agency that the Statement issued as a "Diegueño" was incorrect and mailed supporting documentation to initiate a tribal affiliation and blood quantum correction.

64.     On or about May 7, 2013, the Plaintiff received correspondence from the BIA of the Southern California Agency stating they "do not have the authority to

14
**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

1   change tribal affiliation[s] stated on the 1928 California Roll."

2       65.    As delegated to the Area Director [Regional Director] of the BIA in

3   accordance to 25 C.F.R § 2.4(a) and pursuant to 25 C.F.R. 62.4(a)(6), on May 10,

4   2013, the Plaintiff submitted an administrative appeal to the Pacific Regional Office

5   of the BIA. On or about October 28, 2013, the Plaintiff submitted to the BIA five (5)

6   folders full of historical and genealogical information on Plaintiff's ancestors.

7       66.    On January 2018, almost five years after the initial appeal, the Plaintiff

8   submitted a complaint to the Inspector General of the DOI regarding no decision

9   issued on Plaintiff's appeal. On January 19, 2018, the Complaint was assigned OI-

10  HQ-18-0315-R and on February 5, 2018, a duplicate Complaint was assigned as OI-

11  HQ-18-0365-R, and referred to BIA Officials in Washington for a 90-day response.

12      67.    On March 14, 2018, the Plaintiff submitted a Tort Claim addressed to

13  the Office of the Assistant Secretary of Indian Affairs in Washington D.C. and not

14  until April 23, 2018, the Pacific Regional Office of the BIA provided a final

15  decision, denying Plaintiff's request to correct his tribal affiliation and blood degree

16  stating "because your request lacks sufficient documentary evidence to support your

17  change, it will not be forwarded [Office of Indian Services; Division of Tribal

18  Government Services in Washington, D.C.] as originally stated in the February 17,

19  2016, letter... this decision is final for the Department of the Interior."

20      68.    Plaintiff believes this decision was made intentionally due to Plaintiff's

21  advocacy in multiple Native American movements, and of course, in retaliation for

22  his extensive research on the records of the BIA at the NARA, including hundreds of

23  FOIA Requests exposing BIA's wrongdoings, primarily in California.

24      69.    The BIA's decision was erroneously made final despite that 25 C.F.R §

25  62.10(c) provides: "The Director [of the Bureau of Indian Affairs] shall forward the

26  appeal to the Assistant Secretary for final action together with any relevant

27  information or records..."

28      70.    After a decision by the Director under 25 C.F.R. § 62, an individual

15

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

aggrieved by that decision could file an action in federal district court under the Administrative Procedures Act, as presumably, the decision is "final agency action," for which federal judicial review is available.

### D. Bureau of Indian Affairs Unconstitutional Delegation of Authority on CDIB's

71.    It is unclear when the BIA began issuing CDIB's. It appears the CDIB was created at some point for a specific purpose, and then expanded to a general program. However, it is believed that most likely President Franklin Delano Roosevelt's Executive Order 7423 (July 26, 1936) regarding Indian Preference, brought into place.

72.    Before 1965, Native Americans were provided an Affidavit of Indian Blood, which is equivalent to a CDIB. It was until a July 26, 1965 memo, by the Associate Commissioner, James E. Officer, that a memo was issued explaining new procedures on issuing a Certificate Degree of Indian Blood. However, the current process the BIA has on the issuance of CDIB's to federally recognized, state-recognized, and non-federally recognized, is unclear, because the BIA has proven to be inconsistent.

73.    A CDIB certifies that an individual possesses a specific degree of Indian blood from a United States tribe(s). A deciding Bureau official issues the CDIB. The CDIB is issued so that individuals may establish their eligibility for those programs and services based upon their status as Native American and/or Alaska Natives. A CDIB does not establish membership, and does not prevent an Indian tribe from making a separate and independent determination of blood degree for tribal purposes. However, some tribes do require a CDIB to be included in the federal recognition process and for programs such as "Most Likely Descendant" administered by the California Native American Heritage Commission pursuant Public Resources Code § 5097.98.

74.    A CDIB is a key that unlocks educational loans, medical services, employment preference, or other federal benefits unique to Native Americans, and, in some circumstances, even enrollment as a member of a tribal nation. Indeed, any Native American or parent of a Native American can describe numerous situations where a CDIB is requested or required, for the most mundane of activities, such as registering for on-reservation or near-reservation schools, signing up for sports, or seeking college scholarships. *See* 42 C.F.R. § 435.407(a)(5)(ii)(2)(B)(2012) (A CDIB is also an acceptable document to prove United States citizenship for Medicaid eligibility. *See* also 25 C.F.R. § 256. 13(d) (2015) (The BIA will accept a CDIB as proof of tribal membership to apply to the Housing Improvement Program.) *See also* 45 C.F.R. § 286.20 et. seq. (A CDIB is an acceptable document for Tribal TANF Services.) As recognized in 25 U.S.C. § 1679, Indian Health Service, accepts a CDIB for services because "Nothing in this section may be construed as expanding the eligibility of California Indians for health services provided by the Service beyond the scope of eligibility for such health services that applied on May 1, 1986."

75.    However, the Agency does not have a model on which roll the CDIB's should be issued. As it appears on Exhibit 1, some CDIB's are issued based on the 1928 Indian roll, while other CDIB's are issued based on the 1948 or 1968 Indian roll. Clearly, the BIA is aware of the lack of regulations for CDIB's, and the Interior Board of Indian Appeals (hereinafter "IBIA") mandate to create them. *See* 44 U.S.C. § 3101; *see also* 5 U.S.C. § 552.

76.    The BIA published a draft regulation for CDIB's in 2000, and specifically cited the ruling in *Underwood v. Deputy Assistant Secretary-Indian Affairs (Operations)*, 93 I.D. 13, 14 IBIA 3, January 31, 1986, as the reason to issue them. See 65 Fed. Reg. at 20777. (The BIA did not, however, mention that the IBIA no longer had jurisdiction over CDIB appeals after the 1987 revision to the IBIA's jurisdiction. *See Myles v. Acting Eastern Oklahoma Regional Director, Bureau of Indian Affairs*, 55 IBIA 38 (2012); *Sanders v. Eastern Oklahoma Regional Tribal*

17

1    *Government Officer*, 50 IBIA 307 (2009); *GrosVenor v. Sacramento Area Director,*
2    *Bureau of Indian Affairs*, 22 IBIA 193 (1992). (IBIA no longer have jurisdiction to
3    review decisions concerning the certification of degree of Indian blood or tribal
4    enrollment decisions).

5        77.   In reviewing the Bureau's practices, the IBIA ruled that the degree of
6    Indian blood of an individual cannot be changed by the Bureau on the basis of "the
7    evidentiary standards set forth in unwritten policy statements" and advised the
8    Bureau to develop and issue regulations, *Underwood v. Deputy Assistant Secretary-*
9    *Indian Affairs (Operations)*, 93 I.D. 13, 14 IBIA 3, January 31, 1986. In the absence
10   of regulations, the Bureau has been without the authority to invalidate or amend
11   CDIBs issued in error.  As a result, there are individuals who do not receive services
12   for which they may qualify and individuals who receive services for which they do
13   not qualify.

14       78.   The BIA has been on notice since 1986 that its CDIB program is of
15   questionable validity, because it operates without regulations issued after public
16   notice and comment under the Administrative Procedures Act. In *Underwood v.*
17   *Deputy Assistant Secretary-Indian Affairs (Operations)*, this action reveals perhaps
18   the most controversial policy of the BIA related to blood quantum. The BIA did not
19   issue final regulations after *Underwood*. It did, however, make an important
20   procedural change to CDIB administrative appeals.

21       79.   In 1987, the BIA issued a notice in the Federal Register (Notice) that it
22   was revising the regulations concerning enrollment appeals found at 25 C.F.R. § 62.
23   *See Enrollment Appeals*, 52 Fed. Reg. 30159 (Aug. 13, 1987). The stated reason for
24   this change was to create uniform rules for enrollment appeals, where some appeals
25   went through the IBIA administration under 25 C.F.R. Part 2, and others went
26   through the BIA, which caused confusion. Simply put, BIA actions might result in
27   different procedures depending on who appealed the decision.

28       80.   Existing federal laws and regulations require some form of proof of

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

Indian blood for various purposes. Some of these regulations even expressly refer to CDIB. Unless these laws and regulations are amended to eliminate the need for a method of providing Indian blood or Indian blood degree, uniform standards for issuance, amendments, and denials of CDIB are essential for compliance with the law. *See* 65 Fed. Reg. at 20775 (April 18, 2000) (publishing draft CDIB regulations and discussing the CDIB)

81.     It is unclear whether the "instruction manual" included the rules set out in 83 IBIAM Supplement 2, as the IBIA opinion does not specify what manual or section the Deputy Assistant Secretary cited. (The "instruction manual" may be a handbook on tribal enrollment put together by the BIA's Phoenix Area Office and published in 1984). However, the IBIA believed that the main BIA manual contained no such rules.

82.     Regardless, the IBIA noted these policies were unpublished and "hidden regulations, available to and known by only the initiated few" in violation of the requirement of notice and comment. *See Indian Affairs Manual* (Part 73—Tribal Government Services is listed as "Reserved.") The IBIA adopted the 1977 American Indian Policy Review Commissions' characterization of unpublished BIA policies as "hidden regulations."

83.     In its report to Congress, the Commission sharply criticized the BIA's practice to have unpublished internal policies instead of actual published regulations. Indeed, the BIA was then on notice even before *Underwood* that their policies, including those for CDIBs, were of questionable validity. Indeed, the IBIA also noted that the Deputy Assistant Secretary had admitted in his answer brief that even more BIA offices were unaware of procedures related to CDIBs. *See Department Manual 381 DM1* (Requires that Indian Affairs provide proper documentation of its organizations, functions, policies, and procedures).

84.     83 BIAM Supplement 2 suggests the BIA allows the Indian blood from a non-recognized tribe to be included on a CDIB, if "specific justification is

presented." 83 BIAM Supplement 2, § 9.1 (The same section apparently authorizes the inclusion of blood from a Canadian or terminated tribe as well with "specific jurisdiction.")

85.     As described herewith, the BIA policy on the issuance of CDIB's is inconsistent and discriminatory to Native Americans, especially to individuals affiliated with a non-federally recognized tribe, state-recognized tribe, or disenrolled from a tribe. As confirmed in Exhibit 1, the BIA has a history of issuing CDIB's to Native Americans regardless of tribe(s) or Indian status.

86.     As originally requested, a CDIB should be issued instead of a Statement Letter because the BIA must comply with their policies and services to Native Americans. Further, there is no indication that Plaintiff's direct ancestor; Mary Grijalva had intended any affiliation with the Diegueño tribe. Therefore, by refusing to acknowledge Plaintiff as a Gabrielino Indian, the BIA is refusing to acknowledge the existence and in fact, it is creating paper genocide of an entire lineage in order to force agreement with the history books and newspapers stating that the original inhabitants of Los Angeles, the Gabrielino people, are "dead and extinct."

87.     Plaintiff and family members are entitled to pursue federal recognition, including, to receive services guaranteed by the BIA and the State of California. The BIA's decision to strip hundreds of Gabrielino descendants from misclassification must be corrected.

88.     Plaintiff's ancestor, Mary Grijalva, is full sister of Aurelia Grijalva and Guillermo Grijalva. Their lineage comes from the same parents who are Gabrielino Indians living in the historical ancestral lands of the Gabrielino. Nevertheless, the BIA has sabotaged the identity of hundreds of Mary Grijalva Bega descendants for no apparent reason.

89.     Thus, this arbitrary and capricious classification "contrary to or involved an unreasonable application of clearly established federal law," because settled Federal law provides "[n]othing in this Act shall be constructed to impair or

prejudice any claim or suit of any Indian tribe against the United States" and the DOI has a "moral obligation of the highest responsibility and trust" according to the U.S. Supreme Court in *Seminole Nation v. U.S.* (1942).

## VI.   FIRST CLAIM FOR RELIEF

### (Injunctive Relieve Pursuant to 5 U.S.C. § 702)

### (Right of Review)

90.    Plaintiff re-alleges Paragraphs 1 through 89 above and incorporates those paragraphs in their entirety herein.

91.    Defendant Amy Dutschke has been delegated the authority to carry out the duties as the Regional Director of the BIA in California.

92.    Under 25 U.S.C. section 1679(a)(2), Defendant Dutschke has a statutory duty to issue a CDIB to ensure services for California Indians.

93.    Under 25 U.S.C. section 651 et seq., Defendant Dutschke has a statutory duty to administer that duty in a consistent manner among similarly-situated of California Indians.

94.    Under 25 U.S.C. section 659, Defendant Dutschke has a statutory duty to maintain an accurate tribal affiliation and blood degree in the Secretary of the Interior California approved Indian rolls.

95.    Pursuant to the express directions of Congress in delegating that duty through the Indian Health Care Improvement Act, California Indian Policy Act and the Act of May 18, 1928, Defendant Dutschke must be consistent with BIA policies to California Indians which are eligible for special programs and services provided by the United States fiduciary obligation.

96. Plaintiff Reyes is a California Indian descent, and has requested since 2013 that Defendant Dutschke correct his tribal affiliation, blood degree and issue him a CDIB.

97.    Defendant Dutschke has unreasonably, arbitrarily and capriciously

refused to provide to the Plaintiff a CDIB listing him as a Gabrielino Indian.

98.    As a result of the ambiguity created by the Defendants' failure to correct Plaintiff's tribal affiliation, blood degree and issue a CDIB, the Plaintiff is adversely affected and aggrieved and is suffering a gross and wrongful deprivation of his rights as a California Indian.

99.    As a direct result of the Defendants' failure to correct Plaintiff's tribal affiliation, blood degree and issue a CDIB, their inaction has led to harassment, stalking and other damages to the Plaintiff as described in *Emilio Reyes vs. Lorraine Escobar, et al*., Case No. BC724250 of the Los Angeles Superior Court.

100.    Only Congress has authority to terminate the United States' services to California Indians.

101.    Defendant's refusal to issue a CDIB with the correct tribal affiliation and blood degree violates Plaintiff's Constitutional rights to equal protection and due process given the Bureau's documented history on the issuance of CDIB policy and of correcting tribal affiliations and blood degrees.

102.    The tribal affiliation and blood degree dispute that now confronts the Mary Grijalva and Antonio Bega descendants has its roots in the extremely harsh and almost unbelievably inhumane treatment at the hands of the DOI.

103.    The Court should compel Defendants to issue a CDIB to the Plaintiff listing him as a Gabrielino descendant with the correct blood degree.

104.    Plaintiff has no other adequate remedy to compel Defendant to respond to Plaintiff's request to receive a CDIB with the correct tribal affiliation and correct blood degree.

105.    The conduct of Defendants alleged herein constitutes a denial of full and equal access to Plaintiff's tribal identity.

106.    The DOI hidden regulations is inconsistent conduct alleged herein and in violation of the Federal Records Act (44 U.S.C. § 3101), Administrative Procedures Act (5 U.S.C. § 552) and Departmental Manual 381 DM 1.

107.   Unless enjoined, the Plaintiff cannot pursue federal recognition in accordance to 25 C.F.R. § 83 because there are no historical records substantiating a connection to the Diegueño tribe. As a result, the BIA would be inconsistent with the Office of Federal Acknowledgement process.

108.   Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, the BIA will continue to violate the rights of Plaintiff and others entrusted to serve.

109.   Unless Defendants are preliminarily and permanently enjoined, Plaintiff will be irreparably harmed in a manner which cannot be adequately compensated in monetary damages.

110.   Enjoining Defendant should also avoid a multiplicity of legal actions which may otherwise have to be initiated and prosecuted by the Plaintiff and others regarding further or additional instances of damages, harassing, intimidating, tormenting, embarrassing, dissemination, and stalking.

111.   Plaintiff is therefore entitled to declaratory and injunctive relief.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. That the Court reverses Defendant BIA final determination refusing to correct Plaintiff's tribal affiliation and blood degree pursuant 5 U.S.C. § 706.

2. Order that Defendant correct their records to reflect Plaintiff's direct Ancestors Mary Grijalva and Antonio Bega as full Gabrielino Indians pursuant 25 U.S.C. § 659(b).

3. Order that Defendant must issue a CDIB to Plaintiff and to all Mary Grijalva and Antonio Bega descendants.

4. Order that Defendant must continue the CDIB practice and policy to all Native Americans regardless of tribal affiliation, blood degree, or Indian status.

23

5. Order that Defendant must salvage, retrieve, or reconstruct the records destroyed regarding Plaintiff's tribal affiliation, blood degree and related records and further order that the BIA must provide a statement of the safeguards established to prevent further loss of federal documentation pursuant 36 C.F.R. § 1230.14.

6. Declare that Defendant's actions were inconsistent, arbitrary and capricious.

7. Expedite this action in every way pursuant 28 U.S.C. § 1657(a).

8. Attorney's fees and costs.

9. That the Court grant Plaintiff any and all other relief to which Plaintiff may justly be entitled.

## VIII.  **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues triable to a jury.

Date: May 8, 2020

*/s/ Emilio Reyes*

EMILIO REYES

## **<u>VERIFICATION</u>**

I, EMILIO REYES, have read the foregoing Complaint Injunctive Relief, and attachment of Exhibits 1-15, and know the contents therein.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Verification was executed on May 8, 2020, at San Diego, California.

*/s/ Emilio Reyes*
EMILIO REYES

**VERIFIED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

# Exhibit 1

BUREAU OF INDIAN AFFAIRS
SOUTHERN CALIFORNIA AGENCY
2038 IOWA AVENUE, SUITE 101
RIVERSIDE, CA 92507

Tribal Operations
3722-T2

JUL - 3 2001

## CERTIFICATION OF DEGREE OF INDIAN BLOOD

This is to certify that _____ Earl Campio _____ is enrolled as a California Indian under the Act of September 21, 1968 (82 Stat. 860 & 861), and is named on the California Judgment Fund Roll of California Indians, completed as of December 15, 1972, as enrollee number _____ date of birth _____ . Information as to degree of Indian Blood is not shown on this roll, however, other records in this office show him/her to be the _____ Son _____ of _____ Roll No: _____ on the 1972 Judgment Fund Roll of California Indians; _____ Gabrieleno (San Gabriel), _____ and _____ Total Degree _____

Based on the above relationship the applicant's degree of Indian Blood is computed to be _____ Gabrieleno (San Gabriel), _____ and _____ Total Degree.

NOTE: The Gabrieleno (San Gabriel) and Juaneno (San Juan Capistrano) tribes are not federally recognized as set forth in 25 CFR 83.5 (a) and the above named individual, therefore, may not be eligible for Bureau of Indian Affairs services.

Sincerely,

*Virgil Townsend*

(FACSIMILE SIGNATURE)

Virgil Townsend
Superintendent

**COPY**

Tribal Operations
2298-D7

APR 15 1992

CERTIFICATION OF DEGREE OF INDIAN BLOOD

This is to certify that _____ Angeline (Grijalva) Abrego _____ is
enrolled as a **California Indian** under the Act of May 24, 1950 (64 Stat. 189),
and is named on the revised roll of California Indians, completed as of June 30,
1955, as enrollee number _____, date of birth _____

Information as to degree of Indian blood is not shown on this roll, however,
other records in this office show him/her to be the

_____ Daughter _____ of _____ 1928 Roll No. _____

▇ San Gabriel

Based on the above relationship the applicant's degree of Indian blood is
computed to be _____ San Gabriel

Sincerely,

Virgil Townsend
Superintendent

NOTE:  The San Gabriel tribe is not federally recognized as set forth in
15 CFR 83.5(b) and the above named individual, therefore, may not be
eligible for Bureau of Indian Affairs services.



# UNITED STATES
# DEPARTMENT OF THE INTERIOR

BUREAU OF INDIAN AFFAIRS
SOUTHERN CALIFORNIA AGENCY
2038 IOWA AVENUE, SUITE 101
RIVERSIDE, CALIFORNIA 92507-2471
PHONE (909) 276-6624  FAX (909) 276-6641

JAN 3 1 2001

## CERTIFICATION OF DEGREE OF INDIAN BLOOD

This is to certify that _____ Stefanie Rodriguez _____ is enrolled as a California Indian under the Act of September 21, 1968 (82 Stat. 860 & 861), and is named on the California Judgment Fund Roll of California Indians, completed as of December 15, 1972, as enrollee number _____, date of birth _____. Information as to degree of Indian Blood is not shown on this roll, however, other records in this office show him/her to be the _____ Daughter _____ of _____ 1972 Judgment Fund Roll of California Indians: _____

Based on the above relationship the applicant's degree of Indian Blood is computed to be _____ Gabrieleno _____

***NOTE: The Gabrieleno tribe is not federally recognized as set forth in 25 CFR 83.5 (a) and the above named individual, therefore, may not be eligible for Bureau of Indian Affairs services.***

Sincerely,

Virgil Townsend
Superintendent



IN REPLY REFER TO:

Tribal Operations
3722-T2

**UNITED STATES
DEPARTMENT OF THE INTERIOR**

BUREAU OF INDIAN AFFAIRS
SOUTHERN CALIFORNIA AGENCY
2038 IOWA AVENUE, SUITE 101
RIVERSIDE, CALIFORNIA  92507-2471
PHONE (909) 276-6624  FAX (909) 276-6641

MAY 7 - 2004

## CERTIFICATION OF DEGREE OF INDIAN BLOOD

Applicant,   Angel Rodriguez Reyes   born ███████████   is identified to be the

Son  of  ████████████   Roll No. ███████  on the  1972 Judgment Fund Roll of

California Indians,  ████████████ _____.

Based on the stated relationship and the information shown in records in this Agency, the

applicant's degree of Indian blood is computed to be   ████ Gabrieleno _____.

***NOTE: The Gabrieleno tribe is not federally recognized as set forth in 25 CFR 83.5 (a) and the above named individual, therefore, may not be eligible for Bureau of Indian Affairs services.***

*This statement supercedes the previous certification issued on 5/06/04.*

Sincerely,

James J. Fletcher
Superintendent

# Exhibit 2

# Family Tree



# Exhibit 3



UNITED STATES OF AMERICA
DEPARTMENT OF THE INTERIOR

BUREAU OF INDIAN AFFAIRS
Southern California Agency
1451 Research Park Dr., Suite 100
Riverside, CA 92507-2154
Telephone (951) 276-6624   Telefax (951) 276-6641

IN REPLY REFER TO:

Tribal Operations
3722-P5



Mr. Emilio Reyes

Dear Mr. Reyes:

This is to acknowledge receipt of your resubmitted application received on ▮▮▮▮▮▮▮▮▮▮ requesting a Certification of Indian Blood.

Please be advised, the Bureau of Indian Affairs' policy on issuing certifications of Indian Blood has changed.  The instructions with the application you submitted now state the applicant must show their relationship to an enrolled member(s) of a ***federally recognized Indian tribe*** to receive a certification of degree of Indian blood.

Our records show that you are affiliated with the ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ This information is found on your ▮▮▮▮▮▮▮▮▮▮ **Mary Bega's** 1928 enrollment application.  We are unable to issue you a certification of Indian blood.  However, we have prepared a statement verifying you are of *California Indian descent* that should be sufficient for your needs.

We are returning your submitted birth certificates and other documents back to you.  If you have any questions, please contact the Branch of Tribal Operations at (951) 276-6624 Ext. 229.

Sincerely,

*Frances L. Muncy*

/w/ Robert Eben
Superintendent

Enclosures


TAKE PRIDE
IN AMERICA

# Exhibit 4



**Search Criteria**

| ID | Last Name | First Name | Number of Items | Year | CD Number | |
|------|-----------|------------|-----------------|------|-----------|------|
| 4002 | ROMO | ESTHER | 1 | 1972 | 3 | View |

Year: ○ 1928 ○ 1950 ◉ 1972 ○ All

Last Name: romo

First Name: es

ID:

Search

◀◀ ◀ Page 1 of 1 ▶ ▶▶



Applic. # 004002                                    Folder #

                                                        2593

Romo                Esther                    F  11/21/1922        A 2

214 Sheridan St.

Corona          Ca065  91720  02/10/69

Father    John Aguilar                Tribe  MI

Mother    Concepcion Bega            Tribe  Gabrielano

Eligibility claimed thru:____ mother

1933 Roll #_____ Rev. Roll # 187          1950 Rej. X

Applic. filed by  self

Page 1

(Instructions:) Initial each item checked.

Folder # _2598_
Appl. # _4003_
Timely: Yes ✓ No _____   _ph_

Name _Romo, Esther_                           DOB _11-22-22_   _ph_

Other Names _Aguilar, Rodriguez_   _ph_

If deceased, DOD _____ Evidence submitted? Yes____ No ____   _____

List Duplicate Applications _____   _____

Applicant eligible as:
       ____ A1 - (Person on previous roll.) - - - - - - - - - -
       ✓    A2 - (Person who has relative on previous roll.) - - - - - - - -   _rb_
       ____ A3 - (Lineal or collateral relationship to an Indian residing
                    in California on June 1, 1852.) - - - - - - - - -
                    Tribe _Gabrielino_ - - - - - - - - -   _rb_

Applicant determined ineligible.  Reason _____  - - - - - - - - - -   _____

Letter of Notification - Date _____  - - - - - - - - -   _____

Eligible for 44 Award only ____.  Eligible for both Awards _✓_.

Applicant's family who have filed:
       ____ Grandparents
       ____ Parents _Conception F147_
       ____ Children
       ____ Brothers/Sisters
       ____ Aunts/Uncles
       ____ Cousins

A1 - Source information for verifying applicant's claim:
       ____ On 1933 Roll # _____ (Appl. # _____) - - - - -   _____
       ____ On Revised Roll # _____ (48 Appl. _____ or 50 Appl. _____)- -   _____
       ____ Not identified on either roll from check made.
       ✓    1950 Rejectee - - - - - - - - - - - - - - - - - - - -   _rb_
       ____ Not previously enrolled.- - - - - - - - - - - - - - - -
       ____ Other - - - - - - - - - - - - - - - - - - - - - - - -

A2 or A3 - Source for verifying applicant's claim.  If applicant is A2
              give name and relationship of person on roll:

       Name _Conception Bega Aguilar_ _Rb 187_ Relationship _mo_   _ph_
       Documents which support claim:
       ____ Birth Certificate or other acceptable evidence to support claimed
              relationship. Yes _✓_ No ____ - - - - - - - - - - - - - - - -   _ph_
       ____ Family tree chart supported by documents. Yes ____ No ____ - - - -   _____
       ____ Affidavits - - - - - - - - - - - - - - - - - - - - - - - -   _____

_____ Probate Determinations - - - - - - - - - - - - - - - - -  _____
_____ Marriage Certificates - - - - - - - - - - - - - - - - -  _____
_____ Death Certificates - - - - - - - - - - - - - - - - - -  _____
_____ Tribal Membership Rolls - - - - - - - - - - - - - - -  _____
_____ Census Records - - - - - - - - - - - - - - - - - - - -  _____
_____ Public School or Boarding School Records - - - - - - -  _____
_____ Church Records - - - - - - - - - - - - - - - - - - - -  _____
_____ Newspaper Clippings - - - - - - - - - - - - - - - - -  _____

Comments:




Re Payments:


Info Re Mixed Ancestry:

   Name California and Splinter Tribes _____.

   Advised by letter dated _____.

   Applicant's choice given in writing on _____.


Decision:

_Signature_
Claims Examiner

10-15-70
Date

6. NAME THE CALIFORNIA TRIBE, BAND OR GROUP OF INDIANS WITH WHICH YOUR ANCESTORS WERE AFFILIATED ON JUNE 1, 1852: _____ Mission _____

7. COMPLETE THE FOLLOWING FAMILY HISTORY CHART:

Esther Aguilar Romo
APPLICANT'S NAME

John Aguilar
APPLICANT'S FATHER
TRIBE _____ Mission _____

Concepcion Bega
APPLICANT'S MOTHER
TRIBE _____ Mission _____

Salmon Aguilar
PATERNAL GRANDFATHER
TRIBE _____ Mission _____

Custodia Molina
PATERNAL GRANDMOTHER
TRIBE _____ Mission _____

Antonia Bega
MATERNAL GRANDFATHER
TRIBE _____ Mission _____

Mary Grajalva
MATERNAL GRANDMOTHER
TRIBE _____ Mission _____

8. NOTE: (TO BE COMPLETED BELOW ONLY IF PERSON FILING THIS APPLICATION IS ACTING IN BEHALF OF A MINOR, A MENTAL INCOMPETENT OR OTHER PERSON IN NEED OF ASSISTANCE, A MEMBER OF THE ARMED FORCES, OR A PERSON WHO WAS LIVING ON SEPTEMBER 21, 1968, BUT WHO DIED ON OR AFTER THAT DATE.)

NAME: _____

ADDRESS: _____

RELATIONSHIP TO APPLICANT: _____
(INDICATE WHETHER PARENT, GUARDIAN, FRIEND, ETC.)

ATTENTION: CRIMINAL PENALTIES ARE PROVIDED BY STATUTE FOR KNOWINGLY MAKING FALSE STATEMENTS (18 U.S.C. 1001).

028006

# Exhibit 5



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Pacific Regional Office
2800 Cottage Way
Sacramento, California 95825

IN REPLY REFER TO:

Tribal Government Services

Certified Mail No. 7016 3010 0001 0587 8229
Return Receipt Requested

Emilio Reyes

Dear Mr. Reyes:

This is in response to your ▬▬▬▬▬▬ request for a statement correcting the tribal affiliation listed on your verification of California Indian Descent (Verification) issued on ▬▬▬▬▬▬ by the ▬▬▬▬ ▬▬▬▬▬▬ Bureau of Indian Affairs. According to the verification you are a direct descendant of Mary (Gryalba) Bega (aka ▬▬▬▬▬▬ date of birth ▬▬▬▬▬ who is named on the Census Roll of the Indians of California under the Act of May 18, 1928 (45 Stat., P. 602) (1928 California Roll) as enrollee number ▬▬▬ and of ▬▬▬▬▬▬ Indian descent. In addition, you have subsequently requested to increase the degree of Indian blood of Mary (Gryalba) Bega, who is listed on the 1928 California Roll as 1/2 Tribe Unknown Riverside County.

In a letter dated ▬▬▬▬▬▬ to the Agency you disputed its ▬▬▬▬ determination and requested a statement with your purported correct tribal affiliation, ▬▬▬▬▬▬ The Agency responded by correspondence dated ▬▬▬▬▬▬ stating the Agency's determination was based on the information contained in ▬▬▬▬▬▬ Mary Bega's 1928 application and her personal family history testimony. Further, in the Agency's correspondence to you there ▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬.

In issuing your Verification, the Agency relied on the information provided by Mary Bega as ▬▬▬▬▬ ▬▬▬▬▬▬▬▬ included on the 1928 California Roll. According to the Agency's research, Mary states in her application that her mother, Guadalupe (Arballo) Grijalva, was born in San Diego, California (Question #16), and was living there in June of 1852 (Question #20). This information was substantiated by sworn testimony of her two witnesses, Salvador Aguallo and Joe Castro, who personally knew her for 35 years and 45 years respectively. The Agency also examined the 1928 enrollment applications of Guillermo Grijalva and Aurelia (Grijalva) Orozco, who are Mary Bega's siblings. Aurelia stated that she was born in San Bernardino County (Question #16) and that her mother, Guadalupe (Arballo) Grijalva and her Indian ancestors were born in San Bernardino County (Question #27). Guillermo stated that he and his children were born in San Bernardino County (Question #4) and claimed lands in San Bernardino (Question #14). He also claimed his Indian grandparents were from Santa Barbara County (Question #27). In addition, the Agency informed you that they lack the authority to change an individual's tribal affiliation.

This Office has reviewed the volumes of documents submitted by you, and the record submitted by the Southern California Agency. In addition, this Office worked with the National Archives and Records Administration to research and retrieve additional documentation related to the degree of Indian blood and tribal affiliation of your ancestors. While extensive records document your family ancestry — including birth and death records, marriage certificates, 1950 and 1972 California Indian judgement fund records, affidavits, and baptismal records — these documents are used by the Bureau to determine familial relationships such as parentage, and not to determine tribal affiliation or degree of Indian blood.

With regard to affidavits, a valid affidavit should be from persons who were alive at the time of birth and old enough at that time to have personal knowledge of the facts that are sworn to. Any other testimony is hearsay and therefore not acceptable. Even if a small boy witnessed a birth, for example, he would have known the facts later in life only because they had been repeated to him by another and would not be acceptable because he lacks direct knowledge of the event. However, there is no disputing that you descend from Mary Bega, and that her parents are Guadalupe (Arballo) Grijalva and Louis Grijalva.

Further, an affidavit from an individual attesting to their higher blood degree is not sufficient documentary evidence to substantiate the higher degree of Indian blood. General references to Indian ethnicity on birth or death certificates do not hold significant weight as documentary evidence such as Bureau records. When determining degree of Indian blood for an individual, credible evidence must explicitly list a blood degree associated with that person.

This Office has reviewed the 1928 application of Mary Bega (No. 5676), and the 1928 applications of her siblings Guillermo Girjalva and Aurelia (Grijalva) Orosco (Nos. 9462 and 9461 respectively). Guadalupe (Arballo) Grijalva and Louis Grijalva were not included on the 1928 California Roll. The materials reviewed made various statements regarding their tribal affiliation and that of their parents:

- Mary Bega's Application No. 5676 lists her tribe as unknown, her mother born in San Diego, and her father born in Mexico.

- Guillermo Grijalava's Application No. 9462 shows his tribe as Mission San Gabriel, his mother born in Santa Barbara, and his father born in Mexico.

- Aurelia (Grijalva) Orosco is listed on her son Raymond Orosco's 1928 Application No. 14468. Raymond lists his Indian grandparents on his mother's side as born in San Bernardino County but states his maternal grandfather, Louis Grijalva, was Mexican and his maternal grandmother, Guadalupe Grijalva, was 4/4 Indian.

- The 1928 Application of Jose M. Orosco, Application Number 8757, who was Raymond's father, lists his wife, Aurelia (Grijalva) Orosco (aka Amelia Orosco) as Mexican.

This Office has been unable to locate any additional documents providing information concerning your ancestors' degree of Indian blood and tribal affiliation, with the exception of a ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ discussed the degree of Indian blood of the children of Jose Orosco and Aurelia (Grijalva) Orosco (aka Amelia Orosco), stating that Mr. Orosco ▮▮▮▮▮▮▮▮▮▮ However, the ▮▮▮▮▮▮▮▮ does not address the ▮▮▮▮▮▮ related to the family's tribal affiliation; the ▮▮▮ only addresses the degree of Indian blood as it relates to ▮▮ children and their eligibility for enrollment in ▮▮▮▮▮▮▮▮▮▮

Based on an analysis of the records and materials in this case the preponderance of evidence does not support your request. This Office has completed a thorough review of the record and there is no clear and convincing evidence supporting your claims related to Mary Bega's degree of Indian blood and tribal affiliation. By Mary Bega's own admission, as stated on her 1928 application, she was 1/2 Indian and her mother was born in San Diego. The Agency determination that the tribal affiliation for Indians from the ███████ including Mary Bega's mother Guadalupe (Arballo) Grijalva, are ██████ based on anthropological information obtained from the *Handbook of the Indians of California* by A.L. Kroeber, is ███████ ███████████████ the Bureau of Indian Affairs ████████████████████████████ or issue you a statement identifying your tribal affiliation as ████████ As such, Mary Bega's degree of Indian blood is ███████████ as stated on the 1928 California Roll.

In your letter dated ███████████ you stated you are the point of contact for your family regarding this request and submitted names and signatures of your relatives which you purportedly represent. However, this Office has not received the contact information for those individuals; therefore, this shall serve as notice of this decision to all parties represented by you.

In correspondence dated ████████████ this Office informed you that after completion of reviews from the Agency and this Office your request would be forwarded to the Division of Tribal Government Services in Washington D.C., as they have authority to make changes to Indian Census Rolls. Because your request lacks sufficient documentary evidence to support a change, it will not be forwarded as originally stated in the ███████████ letter. In accordance with 25 Code of Federal Regulations, Part 62.10, this decision is final for the Department of the Interior.

Sincerely,

*[signature]*

Acting Regional Director

cc:    Division Chief, Division of Tribal Government Services
       Superintendent, Southern California Agency

3

# Exhibit 6



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Southern California Agency
451 Research Park Drive, Suite 100
Riverside, California  92507-2154
Phone (951) 276-6624 Telefax (951) 276-6641

IN REPLY REFER TO;
FOIA BIA-2019-01374

Date: AUG 1 6 2019

Emilio Reyes

████████████████

Dear Mr. Reyes:

This letter is in response to your Freedom of Information Act (FOIA) request. Your request was received in this office for processing on August 16, 2019, and assigned FOIA Control Number BIA-2019-01374. Please cite this number in any communications with the Bureau of Indian Affairs concerning your request.

In your correspondence, you request the following:  "Please provide all correpondence and communication records between the BIA and the Office of Indian Services to the Archivist of the United States, informing them about the alteration, deletion, erasure or destruction of records pertaining to Mary (Grijalva) Bega, ████████████████

After a thorough search of our files and files within the Pacific Regional Office, it has been determined that the BIA has no records responsive to your request.  This is not a refusal to disclose documents but rather a notification that there are no other documents to disclose.

You may appeal this response to the Department's FOIA/Privacy Act Appeals Officer. If you choose to appeal, the FOIA/Privacy Act Appeals Officer must receive your FOIA appeal **no later than 90 workdays** from the date of this letter.  Appeals arriving or delivered after 5 p.m. Eastern Time, Monday through Friday, will be deemed received on the next workday.

**Your appeal must be made in writing**. You may submit your appeal and accompanying materials to the FOIA/Privacy Act Appeals Officer by mail, courier service, fax, or email. All communications concerning your appeal should be clearly marked with the words: "FREEDOM OF INFORMATION APPEAL." You must include an explanation of why you believe the Bureau of Indian Affairs (BIA) response is in error. You must also include with your appeal copies of all correspondence between you and [Bureau] concerning your FOIA request, including your original FOIA request and BIA's response. Failure to include with your appeal all correspondence between you and the BIA will result in the Department's rejection of your appeal, unless the FOIA/Privacy Act Appeals Officer determines (in the FOIA/Privacy Act Appeals Officer's sole discretion) that good cause exists to accept the defective appeal. Please include your name and daytime telephone number (or the name and telephone number of an appropriate contact), email address and fax number (if available) in case the FOIA/Privacy Act Appeals Officer needs additional information or clarification of your appeal.

Department of the Interior
Office of the Solicitor
1849 C Street, N.W.
MS-6556 MIB
Washington, DC 20240
Attn: FOIA/Privacy Act Appeals Office
Telephone: (202) 208-5339 Fax: (202) 208-6677
Email: FOIA.Appeals@sol.doi.gov

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of FOIA. *See* 5 U.S.C. 552(c). This response is limited to those records that are subject to the requirements of FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

The 2007 FOIA amendments created the Office of Government Information Services (OGIS) to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. You may contact OGIS in any of the following ways:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road - OGIS
College Park, MD 20740-6001
E-mail: ogis@nara.gov Web: https://ogis.archives.gov
Telephone: 202-741-5770 Fax: 202-741-5769 Toll-free: 1-877-684-6448

Should you have any questions, please contact Patrick Taber, Southern California Agency FOIA Coordinator at 951-276-6624, ext. 256, or Sandra Hansen, Alternate Coordinator, at 951-276-6624, ext. 223. You may seek dispute resolution services from our Acting, FOIA Public Liaison, Heather Garcia, 1849 C Street N.W. MS-4658 MIB, Washington D.C. 20240; Telephone: 202-208-3135 and email: foia@bia.gov.

Sincerely,

Javin Moore
Superintendent

cc:   PRO FOIA Coordinator/Alternate Coordinator
      Tribal Government Services, SCA

# Exhibit 7

UNITED STATES
**DEPARTMENT OF THE INTERIOR**
OFFICE OF INDIAN AFFAIRS

Application Number  **5676**

Application for enrollment
with the Indians of the State of California under
the Act of May 18, 1928 (45 Stat. L. 602)

The Secretary of the Interior,

Washington, D. C.

Sir:

I hereby make application for the enrollment of myself (and minor
children living on May 18, 1928) as Indians of the State of California in ac-
cordance with the provisions of the Act of Congress of May 18, 1928 (45 Stat.
L. 602). The evidence of identity is herewith subjoined.

1. State the full names, ages, sex, and dates of birth of yourself and your
minor children living on May 18, 1928.

| English Names | Indian Names | Ages In 1928 | Sex | Dates of birth Month Day Year | Blood |
|---|---|---|---|---|---|
| Bega, Mary | Mother (Widow) | 64 | F | 5  3  1864 | 1/2 |
| " , Antonio | son | 49 | M | 1  4  1879 | 1/4 |
| " , Mike | son | 24 | M | 12  3  1904 | 1/4 |

Mother of (Domingo Bega, #5672,
(Nellie Bega Medrano, #5675.

2. Residence on May 18, 1928 ....Prado, Riverside County, California.....

3. Post Office  Prado, P.O.Box 22,      Riverside          California.
              Town or City, Box Number or        County              State
              Rural Route Number

4. Place of birth of yourself and each of your minor children .......................

I was born at Yorba, Orange County, California, my children were
born at Prado, Riverside County, California.

-1-

Name ....Bega, Mary        Application Number

Application Number        5676

Action taken

Approved. JTR.

I was born at Yorba, Orange County, California, and lived there until I was nine years of age, then moved to Prado, Riverside County, California, and have lived there ever since.

6. Are you married?   I am a widow.

7. If a married woman, give your name before you were married.
   Mary Gryalba

8. Name and exact date of birth (Month, Day, and Year) of your wife (or husband).
   Antonio Rege, died April 23, 1917, 75 years old.

9. Is he (or she) of Indian blood?  If so, state the name of the Tribe or Band, and degree of Indian blood.
   No, he was from Mexico.

10. What is your degree of Indian blood and to what Tribe or Band of Indians of the State of California do you belong?

   Half-blood                          Do not know name of band.
   ----------------                    ----------------------------
   Degree of Indian Blood                   Name of Tribe or Band

11. To what Treaty or Treaties were you or your ancestors a party, and where did you (or they) reside on June 1, 1852?  Where and when were said Treaties negotiated?

   I do not know.

12. Give the names of your California Indian ancestors living on June 1, 1852, through whom you claim, who were parties to any Treaty or Treaties with the United States.  If you claim through more than one ancestor living on that date, set forth each claim separately.  State your descent from said ancestor or ancestors setting forth your relationship to them.

   Names                    Tribe or Band                 Relationship by Blood
   -------                  --------------                -----------------------

   Guallaupe Gryalba        Do not know name of band        mother.

-2-

13. Give the names of the Chiefs, Captains and Headmen of the Tribe or Band to which your ancestors belonged on June 1, 1852, who executed the Treaty or Treaties herein referred to, if you know them.

I do not know.

14. What lands in the State of California do you claim were taken from you or your California Indian ancestors by the United States without compensation, or which were appropriated by the United States to its own purposes and for which the United States has refused or failed to compensate you?

I do not know.

15. Give names of your father and mother and your mother's name before her marriage. If either is a white person, so state.

Father—   English Name  Louis Grvalba                None, Mexican.
                                                     **Degree of Indian Blood**
           Indian Name

Mother—   English Name  Gusllaupe Grvalba            Full-blood.
                                                     **Degree of Indian Blood**
           Indian Name

           Maiden Name

16. Where were they born?

           Father    Sonora, Mexico.

           Mother    At San Diego, California.

17. When and where were your parents married?

           They were married at San Diego, California.

18. How were they married, in accordance with the law, or by Indian custom?

           They were married by church ceremony.

-3-

19. Where did they reside after their marriage?

At Yorba, Orange County, California, and Fredo, Riverside County, California.

20. Where did they reside on June 1, 1852, if living at that time?

My mother lived then at San Diego, California.

21. Dates of death of your father and mother.

Father died 12/22/1882, 69 years. Mother died 1925, 104 years old.

22. Were you or your minor children or either of your parents ever enrolled for any land or other benefits?

No.

23. If so, give the number of your allotment, state where it is located, and the name of the Indian School or Agency under whose jurisdiction it now is.

Not allotted.

24. If enrolled on a Census Roll, state your Census Roll Number on the Census Roll of June 30, 1928, and the name of the Indian School or Agency under whose jurisdiction you are.

Not on any census roll.

Census Roll No. June 30, 1928                    Name of Indian School or Agency

25. State the amount and kind of property you now own, and what is your occupation.

I have no property of any value. I own a house and lot at Fredo, my two sons live with me and support me.

26. State English and Indian names of your grandparents on both father's and mother's side, if possible. If any are white persons so state.

|  | Father's Side |  |  | Mother's Side |  |
| --- | --- | --- | --- | --- | --- |
| Names | Degree of Indian Blood. |  | Names | Degree of Indian Blood. |  |

27. Where were they born?

28. Where did they reside during their lives, and where were they living on June 1, 1852?

29. To expedite identification, claimants should give the full English and Indian names, if possible, of their paternal and maternal California Indian ancestors back to June 1, 1852, the name of the Tribe or Band to which they belonged and where they resided on that date.

**REMARKS**

(Under this head the applicant may give any additional information that he believes will assist in proving his claims.)

I solemnly swear that the foregoing statements made by me are true to the best of my knowledge and belief.

Witness to Mark:                                                    Her

*Wilbert Bohker*          (Signature) .......... MARY BEGA

Mark.

Subscribed and sworn to before me this ........6th............ day of

at Mission Indian Agency, Riverside, California.

February, ............., 1932.

My commission expires                          *James H Cabely*

Examiner of Inheritance.

## AFFIDAVIT

(The following affidavit must be sworn to by two or more witnesses who are
well acquainted with the applicant.)

Personally appeared before me ____Salvador Aguallo, 81 years old,____
and ____Joe Castro, 81 years old,____ who, being duly sworn, on oath depose and
say that they are well acquainted with ____Mary Bega,____
who makes the foregoing application and statements, and have known ____her____
personally for ____35____ years and ____45____ years, respectively; that they know
that ____she____ is of California Indian blood of the degree and lineage stated in
the above application and that the facts stated with reference to ____her____ ancestors,
the parentage of ____her____ children, their ages and degree of Indian blood, and
their places of residence are true; that they know ____her____ to be the identical
person ____she____ represents herself to be, and that all statements made by ____her____
are true, to the best of their knowledge and belief, and that they have no inter-
est whatever in ____her____ claim.

H's

| Witnesses to Mark | Signature of Witnesses |
|---|---|
| Wilbert Behler | SALVADOR AGUALLO |
| | Joe Castro |
| | Mark |

Subscribed and sworn to before me this ____6th____ day of
at Mission Indian Agency, Riverside, California

February ____, 19 39.

commission expires

Examiner of Inheritance.

-6-

Exhibit 8

**DEPARTMENT OF THE INTERIOR**
OFFICE OF INDIAN AFFAIRS

Application Number    **9461**
4-29-31
Application for enrollment
with the Indians of the State of California under
the Act of May 18, 1928 (45 Stat. L. 502)

Not enrolled.

The Secretary of the Interior,

Washington, D. C.

Sir:

I hereby make application for the enrollment of myself (and minor children living on May 18, 1928) as Indians of the State of California in accordance with the provisions of the Act of Congress of May 18, 1928 (45 Stat. L. 602). The evidence of identity is herewith subjoined.

1. State the full names, ages, sex, and dates of birth of yourself and your minor children living on May 18, 1928.

| English Names | Relationship in Family | Ages in 1928 | Sex | Dates of Birth Month Day Year | Degree of Indian Blood |
|---|---|---|---|---|---|
| Orosco, Raymond | Head | 18 | M | 6-12-1910 | 3/8 |
| "   Aurelia | Mother | 52 | F | 1876 | 1/2 |

* Son of No. 8757? Jose M. Orosco.

** Full sister of Guillemo Grijalva, enrolled by FWWheat

~~NATIONALITY OF HUSBAND~~

(Wife-Mexican)

2. Residence on May 18, 1928 ...... **Anaheim**

3. Post Office ...... **Anaheim** ............ **Orange** ...... **Calif.**
Town or City, Box Number or    County    State
Rural Route Number.

Note: Not living on trust lands.
4. Place of birth of yourself and each of your minor children ......

**Corona, Riverside Co., Calif.**

-1-

Application Number    9461
Name    Orosco, Raymond

Action taken

Approved, TWW.

5.  Where have you and your children resided since birth?

Riverside Co., San Diego Co., and Orange Co., Calif.

6.  Are you married?   Yes.

7.  If a married woman, give your name before you were married.

8.  Name and exact date of birth (Month, Day, and Year) of your wife (or husband).

Marcida Ogas Orosco, born 1910

9.  Is he (or she) of Indian blood?  If so, state the name of the Tribe or Band, and degree of Indian blood.

No. Mex.

10.  What is your degree of Indian blood and to what Tribe or Band of Indians of the State of California do you belong?

    3/8                                    Mission  SanGabriel.
  Degree of Indian Blood                       Name of Tribe or Band

11.  To what Treaty or Treaties were you or your ancestors a party, and where did you (or they) reside on June 1, 1852?  Where and when were said Treaties negotiated?

I do not know.

12.  Give the names of your California Indian ancestors living on June 1, 1852, through whom you claim, who were parties to any Treaty or Treaties with the United States.  If you claim through more than one ancestor living on that date, set forth each claim separately.  State your descent from said ancestor or ancestors setting forth your relationship to them.

    Names                    Tribe or Band            Relationship by Blood

See application No. 8757.

13. Give the names of the Chiefs, Captains and Headmen of the Tribe or Band to which
your ancestors belonged on June 1, 1852, who executed the Treaty or Treaties
herein referred to, if you know them.

I do not know signers.

14. What lands in the State of California do you claim were taken from you or your
California Indian ancestors by the United States without compensation. or which
were appropriated by the United States to its own purposes and for which the
United States has refused or failed to compensate you?

Lands in San Diego and San Bernadino Counties, Calif.

15. Give names of your father and mother and your mother's name before her marriage.
If either is a white person, so state.

Father— English Name  Jose M. Orosco          o  1/4 No. 8757
                                               Degree of Indian Blood
        Indian Name

Mother— English Name  Aurelia Orosci               1/2
                                               Degree of Indian Blood
        Indian Name

        Maiden Name  Aurelia Grijalva

16. Where were they born?

        Father   San Diego Co., Calif.

        Mother   San Bernardino Co., Calif.

17. When and where were your parents married?

        1899, Corona, Riverside Co., Calif.

18. How were they married, in accordance with the law, or by Indian custom?

        Catholic Church.

-3-

19.  Where did they reside after their marriage?

Riverside Co., Calif.

20.  Where did they reside on June 1, 1852, if living at that time?

Born subsequently.

21.  Dates of death of your father and mother.

Father Living, No. 3757          Mother  Living, enrolled herewith.

22.  Were you or your minor children or either of your parents ever enrolled for any
land or other benefits?

Not enrolled.

23.  If so, give the number of your allotment, state where it is located, and the
name of the Indian School or Agency under whose jurisdiction it now is.

Not allotted.

24.  If enrolled on a Census Roll, state your Census Roll Number on the Census Roll
of June 30, 1928, and the name of the Indian School or Agency under whose jur-
isdiction you are.

Census Roll No. June 30, 1928          Name of Indian School or Agency

25.  State the amount and kind of property you now own, and what is your occupation.

I own no property.

Occupation, Laborer.

26.  State English and Indian names of your grandparents on both father's and mother's
side, if possible.  If any are white persons so state.

| Father's Side | | Mother's Side | |
|---|---|---|---|
| Names | Degree of Indian Blood. | Names | Degree of Indian Blood. |
| Augustine Orosco | Col. Mex. | Louis Grijalva | Mex |
| Carolina       " | 1/2 | Guadalupe Grijalva | 4/4 |

-4-

27. Where were they born?

Indian grandparents on father's side in San Diego Co., Calif.

"      "         on mother's side in San Bernardino Co., Calif.

28. Where did they reside during their lives, and where were they living on June 1, 1852?

As above.

### REMARKS

(Under this head the applicant may give any additional information that he believes will assist in proving his claims.)

Application should be accepted.  TWW

I solemnly swear that the foregoing statements made by me are true to the best of my knowledge and belief.

Witnesses to Mark

(Signature)  Raymond Orosco

Subscribed and sworn to before me this   29th

day of   April   19 31

My commission expires

Special Allotting Agent.

-5-

## AFFIDAVIT

(The following affidavit must be sworn to by two or more witnesses who are well acquainted with the applicant.)

Personally appeared before me ............................ **Marcus H. Forester** and ............... **Emilo Lopera** ............ who, being duly sworn, on oath depose and say that they are well acquainted with ................ **Raymond Orosco** ................................ who makes the foregoing application and statements, and have known .... **his** .. personally for _5_ (5) years and _5_ (5) years, respectively; that they know that .... **he** .. is of California Indian blood of the degree and lineage stated in the above application and that the facts stated with reference to .... **his** .. ancestors, the parentage of ........ **his** children, their ages and degree of Indian blood, and their places of residence are true; that they know .... **him** to be the identical person .. **he** .. represents **himself** to be, and that all statements made by .. **him** ...... are true, to the best of their knowl-edge and belief, and that they have no interest whatever in .... **his** .. claim.

| <u>Witnesses to Mark</u> | <u>Signature of Witnesses</u> |
|---|---|
| ........................................ | *Marcus H. Forster* |
| ........................................ | |

Subscribed and sworn to before me this ...... *Emilo Lopera* **29th** day of ........................ April ......... , 19 **31**.

My commission expires ........................ *[signature]*

**Special Allotting Agent.**

-6-

Exhibit 9

DEPARTMENT OF THE INTERIOR
OFFICE OF INDIAN AFFAIRS

Application Number _____ 9462

4-29-31
Application for enrollment
with the Indians of the State of California under
the Act of May 18, 1928 (45 Stat. L. 602)

Not enrolled

The Secretary of the Interior,

          Washington, D. C.

Sir:

          I hereby make application for the enrollment of myself (and minor
children living on May 18, 1928) as Indians of the State of California in ac-
cordance with the provisions of the Act of Congress of May 18, 1928 (45 Stat.
L. 602). The evidence of identity is herewith subjoined.

1. State the full names, ages, sex, and dates of birth of yourself and your
minor children living on May 18, 1928.

| English Names | Relationship in Family | Ages in 1928 | Sex | Dates of Birth Month Day Year | Degree of Indian Blood |
|---|---|---|---|---|---|
| Grijalva, Guillermo | Head | 64 | M | 2-5-1864 | 1/2 |
| " Louis | Son | 25 | M | 1903 | 1/2 |
| " Elizabeth | Dau | 4 | F | 1924 | 1/4 |
| " Guillermo | Son | 3 | M | 1925 | 1/4 |
| " Dora | Dau | 1 | F | 1927 | 1/4 |

Applicant is husband of No. 9111, Veronica Grijalva (Grialba)

Louis is married to Amelia Arviso, a Spanish lady, aged 22 years.

2. Residence on May 18, 1928 ___ El Toro, Orange Co., Calif.

3. Post Office ___ El Toro ___ Orange ___ Calif.
          Town or City, Box Number or          County          State
          Rural Route Number.
   Note: Not living on trust lands.

4. Place of birth of yourself and each of your minor children ___

San Bernardino, San Bernardino Co., Calif.

-1-

5.  Where have you and your children resided since birth?

San Bernardino and Orange Counties, Calif.

6.  Are you married?   Yes.

               1. Angelita Romero. She is mother of  son Louis,
               1/2 San Gabriel, died 1908.
               2.   Veronica Servag (No.9111)(Sarag)

7.  If a married woman, give your name before you were married.

8.  Name and exact date of birth (Month, Day, and Year) of your wife (or husband).

See No. 9111

9.  Is he (or she) of Indian blood? If so, state the name of the Tribe or Band, and
    degree of Indian blood.

See above

10. What is your degree of Indian blood and to what Tribe or Band of Indians of the
    State of California do you belong?

      1/2                                   Mission, San Gabriel
   Degree of Indian Blood                Name of Tribe or Band

11. To what Treaty or Treaties were you or your ancestors a party, and where did you
    (or they) reside on June 1, 1852?  Where and when were said Treaties negotiated?

   Temecula.  Ancestors resided in San Bernardino Co., Calif. on date

   thereof.

12. Give the names of your California Indian ancestors living on June 1, 1852,
    through whom you claim, who were parties to any Treaty or Treaties with the
    United States.  If you claim through more than one ancestor living on that
    date, set forth each claim separately.  State your descent from said ancestor
    or ancestors setting forth your relationship to them.

| Names | Tribe or Band | Relationship by Blood |
|---|---|---|
| Guadalupe Arballo | San Gabriel | Mother. |

13. Give the names of the Chiefs, Captains and Headmen of the Tribe or Band to which your ancestors belonged on June 1, 1852, who executed the Treaty or Treaties herein referred to, if you know them.

I do not know names of signers.

14. What lands in the State of California do you claim were taken from you or your California Indian ancestors by the United States without compensation, or which were appropriated by the United States to its own purposes and for which the United States has refused or failed to compensate you?

Lands in San Bernardino Co., Calif.

15. Give names of your father and mother and your mother's name before her marriage. If either is a white person, so state.

Father—  English Name  Louis Grijalva                     Mex
                                                    Degree of Indian Blood

         Indian Name

Mother—  English Name  Guadalupe Grijalva                 4/4
                                                    Degree of Indian Blood

         Indian Name

         Maiden Name  Guadalupe Arballo

16. Where were they born?

         Father     Mexico

         Mother     Santa Barbara, Santa Barbara Co., Calif.

17. When and where were your parents married?

    1854, San Bernardino Co., Calif.

18. How were they married, in accordance with the law, or by Indian custom?

    Indian custom.

-3-

19. Where did they reside after their marriage?

San Bernardino and Orange Counties, Calif.

20. Where did they reside on June 1, 1852, if living at that time?

San Bernardino Co., Calif.

21. Dates of death of your father and mother.

Father 1895                              Mother  1926, aged 101

22. Were you or your minor children or either of your parents ever enrolled for any land or other benefits?

Not enrolled.

23. If so, give the number of your allotment, state where it is located, and the name of the Indian School or Agency under whose jurisdiction it now is.

Not allotted.

24. If enrolled on a Census Roll, state your Census Roll Number on the Census Roll of June 30, 1928, and the name of the Indian School or Agency under whose jurisdiction you are.

Census Roll No. June 30, 1928          Name of Indian School or Agency

25. State the amount and kind of property you now own, and what is your occupation.

I own no property.

Occupation: Laborer.

26. State English and Indian names of your grandparents on both father's and mother's side, if possible.  If any are white persons so state.

| Father's Side | | Mother's Side | |
|---|---|---|---|
| Names | Degree of Indian Blood | Names | Degree of Indian Blood |
| I do not know | Mex. | I do not know | 4/4 |
| " | " | " | 4/4 |

-4-

27. Where were they born?

Indian grandparents were born in Santa Barbara Co., Calif.

28. Where did they reside during their lives, and where were they living on June 1, 1852?

As above.

## REMARKS

(Under this head the applicant may give any additional information that he believes will assist in proving his claims.)

Application should be accepted. TWW

I solemnly swear that the foregoing statements made by me are true to the best of my knowledge and belief.

Witnesses to Mark

_____        (Signature) Grijalva Grijalva

Subscribed and sworn to before me this _____ 29th _____

day of _____ April _____ 19 31.

My commission expires _____

Special Allotting Agent.

-5-

## AFFIDAVIT

(The following affidavit must be sworn to by two or more witnesses who are well acquainted with the applicant.)

Personally appeared before me ............ **Marcus H. Forster** ............

and ............ **Mrs. Jessie Vegel** ............ who, being duly sworn, on oath depose and say

that they are well acquainted with ............ **Guillermo Grijalva** ............

who makes the foregoing application and statements, and have known ...**him**.. personally

for *15* years and *15* years, respectively; that they know that ....**he**... is of

California Indian blood of the degree and lineage stated in the above application and

that the facts stated with reference to ...**his**.... ancestors, the parentage of**his** ............

children, their ages and degree of Indian blood, and their places of residence are

true; that they know ......**him** to be the identical person .....**he** represents **himself**

to be, and that all statements made by **him**........ are true, to the best of their knowl-

edge and belief, and that they have no interest whatever in .....**his** claim.

| Witnesses to Mark | Signature of Witnesses |
|---|---|
| ............................................ | *Marcus H. Forster* |
| ............................................ | *Mrs Jessie Vegel.* |

Subscribed and sworn to before me this ............ **29th** ............ day of

............ **April** ............, 19 .. **31**

My commission expires

............................................ *(signature)*

............................................ Special Allotting Agent.

-6-

# Exhibit 10

## INSTRUCTIONS TO APPLICANTS

––––––––––

This application form is for the use of persons claiming the right to enrollment with the Indians of the State of California under the provisions of the Act of Congress of May 18, 1928 (45 Stat. L. 602).

The application blank must be filled in with pen and ink or typewriter, preferably by the use of a typewriter.

Answers should be brief but explicit; the words, "Yes", "No", "Unknown" may be used in cases where applicable. Read the questions carefully.

In any inquiry where the applicant can not furnish the information called for in the blank, he or she should so state.

In case more space is needed to answer any of the inquiries contained in the blank form, extra sheets of paper may be used, the answer to carry the same number as the inquiry.

The applicant should submit the affidavits of at least two disinterested witnesses corroborative of the statements made in his or her own affidavit, on the blank form following the application.

Great care should be taken to write legibly the answers to all of the inquiries. All officials and employees of the Indian Service will be instructed to offer proper assistance to any person claiming to be an Indian of the State of California in the preparation of his or her application for enrollment. Applicants, where possible, should solicit such aid in order to insure that the application is in proper form.

# Exhibit 11

_____   Probate Determinations - - - - - - - - - - - - - -   _____
_____   Marriage Certificates - - - - - - - - - - - - - - -   _____
_____   Death Certificates - - - - - - - - - - - - - - - -   _____
_____   Tribal Membership Rolls - - - - - - - - - - - - -   _____
_____   Census Records - - - - - - - - - - - - - - - - - -   _____
_____   Public School or Boarding School Records - - - - -   _____
_____   Church Records - - - - - - - - - - - - - - - - - -   _____
_____   Newspaper Clippings - - - - - - - - - - - - - - - -   _____

Comments: _Will NOT ASK foR TRIBE, IN 1928 the mother at Age 64
did NOT KNOW, so PRESUMAbly this peRSON will NOT KNOW eiTHeR._
_Mr. Drill stated that the Indians occupying the area where the mother was born were
Gabrielenos._

Re Payments:

Info Re Mixed Ancestry:

  Name California and Splinter Tribes _____.

  Advised by letter dated _____.

  Applicant's choice given in writing on _____.

Decision:

_Ramona Harris_
Claims Examiner

_1-13-70_
Date

# Exhibit 12

FRANK F. MERRIAM
GOVERNOR

RECEIVED





STATE RELIEF COMMISSION

ARCHIBALD B. YOUNG, CHAIRMAN
MRS. ROBERT F. FISHER
DR. FRANK B. GIGLIOTTI
E. M. HIRSCHFELDER
JOY G. JAMESON
MRS. MAUDE SPEAR KING
FRANK Y. McLAUGHLIN
ERNEST L. PETERSON
MRS. FLORENCE L. TURNER

## California
## State Relief Administration
### 3855 Market Street
### Riverside, California

HAROLD E. POMEROY
ADMINISTRATOR

Riverside, California.

Dear Sir:

Re: Bega, Antonio — 1880
    Maria    1862

The Bega family has been known to our Agency since ███ of ███ and recently made re-application for assistance due to unemployment. Mr. Bega's mother, Maria Bega, has on several occasions made application to the Bureau of County Welfare for old age assistance, claiming to have been born in the United States and consequently eligible, as she is over ████████ A birth certificate was secured from the Catholic Church in Anaheim, stating that Mrs. Bega was born ████████ but ████████████████ From our case history we learn that the Bega family has inhabited the ██████████ since ███ and ███ to be full blooded Indians ████████

In an effort to establish a ████████ for Maria Bega so she may obtain old age assistance, is it possible that your records would show any mention of this family and particularly the ████████ ████████

Thanking you for any assistance you may be able to give us, we are

Sincerely yours,

STATE RELIEF ADMINISTRATION
Riverside County

JOSEPHINE D. YATES, Director

Dorothy B. Foote
County Case Supervisor

FVR/ln

# Exhibit 13

## BAPTISMS

MARIA GUADALUPE ARBALLO GRIJALVA - ███████████ (Mother of Mary Grijalva)



Original Spanish text: "Dia ████████████ En la ranchería contigua a la ciudad de ████████ bautise privadamente a una Gentila in articulo mortis hija de Padres Gentiles aquien puse por nombre Maria Guadalupe y para que conste lo firme Fr. Thomas Eztenaga."

Translation version: "Day ████████████ in the ranch next to the city of ████████ I baptized privately a female **gentile** (Indian) in articulo mortis daughter of gentile parents to whom I named **Maria Guadalupe** and I signed Fr Thomas Eztenaga."

ANTONIO BEGA – ████████████ (Husband of Mary Grijalva)

Original Spanish version: "[En ████████████ ] a un p[arvul]o como de 5 mezes de nacido hijo legitimo de los neófitos licenciados ████████████ residentes en el Rancho ████████ a q.n puse por nombre Antonio. Fueron padrinos ████████████ neófito licenciado de esta M.n a q.nes adverti lo necesario y p.a q.e conste lo firme . F. J.A. Alejo Bachelot."

Translation version: "[On ████████████ ] a child of about five months [was baptized], the legitimate son of emancipated **neophytes** (Indians) ████████████ residents of Rancho ████████ who was named **Antonio**. The godparents were ████████████ emancipated neophyte of this mission, who were advised of the necessary [spiritual obligation]. Fr. J.A. Alejo Bachelot."

# Exhibit 14

(Instructions:  Initial each item checked.)

Folder # _147_
Appl. # _145_      _RN_
Timely: Yes _✓_ No ____

Name _AGUILAR, CONCEPCION_      DOB _4-8-1898_   _RN_

Other Names _____ ____

If deceased, DOD _____ Evidence submitted?  Yes____ No ____ ____

List Duplicate Applications _____

Applicant eligible as:                                                    _RN_
   _✓_  A1 - (Person on previous roll.) - - - - - - - - - - -
   ____  A2 - (Person who has relative on previous roll.) - - - - - - -
   ____  A3 - (Lineal or collateral relationship to an Indian residing
           in California on June 1, 1852.) - - - - - - - -
         Tribe _GABRIELENO Diegueno_ - - - - - - -   _RH_
                                    per Pg B

Applicant determined ineligible.  Reason _____ - - - - - - - - - - - - - ____

Letter of Notification - Date _____ - - - - - - - - - - - - - ____

Eligible for 44 Award only ____.  Eligible for both Awards _✓_.

Applicant's family who have filed:
   ____  Grandparents
   ____  Parents
   ____  Children _Solomon, Orlando 1150, Robt 15837, Ruben 6332, Art 5168_
   ____  Brothers/Sisters                _Delfina 52_
   ____  Aunts/Uncles
   ____  Cousins                   _See family charts_

_1333, 5676   Bro:_

A1 - Source information for verifying applicant's claim:
   ____  On 1933 Roll # _____ (Appl. # _____) - - - - - - -
   ____  On Revised Roll # _187_ (48 Appl. _____ or 50 Appl. _4/410_)- -   _RH_
   ____  Not identified on either roll from check made. - - - - - - - - - ____
   ____  1950 Rejectee - - - - - - - - - - - - - - - - - - ____
   ____  Not previously enrolled.- - - - - - - - - - - - - - - ____
   ____  Other - - - - - - - - - - - - - - - - - - - - - - ____

A2 or A3 - Source for verifying applicant's claim.  If applicant is A2
           give name and relationship of person on roll:

      Name _____ Relationship _____ ____
      Documents which support claim:
   ____  Birth Certificate or other acceptable evidence to support claimed
      relationship.  Yes ____ No - - - - - - - - - - - - - - ____
   ____  Family tree chart supported by documents.  Yes ____ No ____ - - ____
   ____  Affidavits - - - - - - - - - - - - - - - - - - - - - - ____

Reproduced at the National Archives at San Francisco

# Exhibit 15

Case 5:18-cv-02128-GW-AGR   Document 63   Filed 05/11/20   Page 79 of 80   Page ID #:475

# CENSUS ROLL OF THE INDIANS OF CALIFORNIA UNDER THE ACT OF MAY 18, 1928 (45 Stat, P. 602)

| MARGINAL REFERENCE No. | Final Roll No. | Application No. | Allotment roll No. | Census June 30 1928 No. | Family Name | ENGLISH NAMES Last Name | First Name | INDIAN NAMES | Relationship in Family | Sex | Age June 30 1928 | Date of Birth | Degree Indian Blood | Name of Tribe or Band | Where Enrolled and Allotted | POST OFFICE | Amount or Kind of Property Owned | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3558 | 3936 | 3936 | | Turns | Rex | | | Single M | M | 67 | 1861 | 4/4 | Wailaki | Never allotted | Weitchpec, Humboldt County, Calif. | Tone | | |



REPLY REFER TO:

Claims Section
F26203

## UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF INDIAN AFFAIRS

Sacramento Area Office
2800 Cottage Way
Sacramento, California  95825

June 10, 1975

TO WHOM IT MAY CONCERN:

This is to certify that ___Amy L. Dutschke_____
enrolled as a California Indian under the Act of September 21, 1968
(82 Stat. 860 & 861), and is named on the  California Judgment Fund
Roll of California Indians,  completed as of December 15, 1972, as
enrollee number ▆▆▆▆▆ , date of birth▆▆▆▆▆▆▆▆▆ .

Information as to degree of Indian blood is not shown on this roll
however, other records in this office show her/him to be the

daugher          of  Ramona N. Burris Dutschke, DOB ▆▆▆▆▆▆▆ ,

28 Roll Number ▆▆▆ , ▆▆▆ Miwok _____

Based on the above relationship the applicant's degree of Indian
blood is computed to be ▆▆▆▆ _____

*Norman L. Sahmaunt*

Norman L. Sahmaunt
Assistant to the Area Director